IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 11-22436-CMB |
| | ) | |
| BRIAN C. BELONZI and | ) | Chapter 7 |
| DANIELLE M. BELONZI, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| THEODORE HAUPT and | ) | Adversary No. 11-2403-CMB |
| BARBARA HAUPT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN C. BELONZI and | ) | |
| DANIELLE M. BELONZI, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

The matter before the Court is an Objection to Discharge filed by Theodore and Barbara Haupt ("Plaintiffs").[1] Plaintiffs assert that Brian C. Belonzi ("Debtor") is not entitled to a discharge pursuant to 11 U.S.C. §727(a)(3) and/or (5).[2] For the reasons stated herein, this Court

---

[1] Although Danielle M. Belonzi is identified as a defendant in the captions of documents filed in this proceeding, the Plaintiffs have not objected to Danielle M. Belonzi's discharge.

[2] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(J), and the Court will enter final judgment in this adversary proceeding. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

finds that the Plaintiffs have not met their burden under either provision of §727 and the Debtor is entitled to a discharge.

I.  **Background and Procedural History**

The Debtors, Brian and Danielle Belonzi, filed for relief under Chapter 7 of the Bankruptcy Code on April 18, 2011. Plaintiffs commenced the above-captioned adversary proceeding on August 2, 2011, objecting to the discharge of Brian Belonzi. Trial was held on May 31, 2012. Two witnesses were called at trial: Barbara Haupt and the Debtor. At the conclusion of trial, the parties were given the opportunity to file post-trial briefs. The briefs have been filed and the matter is now ripe for decision.

II. **Facts**

In 1997, the Debtor was hired as a route worker for a vending machine business owned by the Plaintiffs' son, Jeff Haupt ("Jeff"). The business, Variety Vendors, Inc. ("Variety Vendors"), obtained accounts with various companies in the Pittsburgh and Erie regions and installed, stocked, and maintained food and beverage vending machines at those companies' facilities. Throughout the Debtor's time as an employee, Jeff and the Plaintiffs befriended the Debtor, and in 2000, when Jeff relocated to Virginia, he entrusted the continuation of operations to the Debtor. In addition, Jeff expressed an interest in selling the business to the Debtor.

Around 2006, although the Debtor was extremely interested in purchasing Variety Vendors, he was unable to obtain a loan of the requisite magnitude needed to purchase and he informed Jeff of the same. Jeff then approached his parents, the Plaintiffs, seeking their financial assistance on the Debtor's behalf. The Plaintiffs had previously loaned money to the Debtor on

two separate occasions in 2004. Once again, the Plaintiffs agreed to assist the Debtor. Plaintiffs loaned the Debtor funds to purchase the assets of Variety Vendors for which the Debtor formed Variety Vending, LLC ("Variety Vending").

Two notes contain the terms of the loans made to the Debtor. The first note, dated June 30, 2006, was executed in connection with a loan of $201,000 by the Plaintiffs. The second note, dated July 20, 2006, was executed in connection with a loan of $700,000, which the Plaintiffs obtained from Northwest Savings Bank ("Northwest") by pledging their property as collateral. The Debtor was to be responsible for the monthly payments to Northwest. In connection with the loans, the parties entered into a security agreement, whereby "all of the property, machinery, equipment, inventory and proceeds . . . of Variety Vending, LLC" served as collateral for the loans. *See* Exhibit 5.

By late 2007, managing the Erie accounts had become difficult. By 2008, Variety Vending was also affected by other complications, such as increased competition, increased fuel costs, layoffs and closings at different businesses resulting in loss of accounts and reductions in Variety Vending's revenues. In an attempt to focus on and revitalize the Pittsburgh accounts, the Debtor sold the Erie division of Variety Vending back to Jeff in 2008. As a result of this transaction, the two personal loans made by the Plaintiffs to the Debtor in 2004 and the business loan of $201,000 in 2006 were deemed satisfied. The Debtor, however, was to continue to make the payments on the $700,000 loan obtained from Northwest.

In October 2009, the Debtor relayed to Barbara Haupt that the business was experiencing financial difficulties. Ultimately, the Debtor was forced to lay off his employees and operate the business on his own while working two other jobs. Also, the business lost credit with suppliers, causing the Debtor to continuously race to collect cash and deposit it in the business account in

3

an attempt to avoid an insufficient account balance. However, the Debtor was often unsuccessful in his attempts and a number of fees for insufficient funds accumulated, totaling thousands of dollars. Variety Vending's financial condition continued to deteriorate.

The Debtor made the monthly payments to Northwest until May 2010. The Plaintiffs made the May payment and, in both June and July 2010, the Plaintiffs and Debtor each paid half of the monthly payments to Northwest. Around this time, the Plaintiffs, through counsel, sought a detailed list of all of Variety Vending's accounts, the monthly sales from the accounts, and identification of all equipment. In response, the Debtor compiled a packet of information identifying, *inter alia*, the accounts, location, equipment, and average monthly revenue. Also at this time, Debtor produced profit and loss statements. In a letter to Plaintiffs' counsel dated July 23, 2010, the Debtor noted, in response to an inquiry of missing equipment, that over the years certain equipment was scrapped due to its age and condition or sold to meet business expenses. Ultimately, the business ceased operations in August 2010, and the Debtor cooperated in collecting equipment and turning it over to the Plaintiffs. Plaintiffs sued the Debtor for breach of contract and obtained a judgment in the Court of Common Pleas of Erie County.

### III.   Discussion

Based on the foregoing facts, the Plaintiffs assert that the Debtor is not entitled to a discharge pursuant to §727(a)(3) and/or (5). Plaintiffs contend that the Debtor failed to satisfactorily explain the disposition of equipment and use of the proceeds from the sale of the Erie division of the company. In addition, the Plaintiffs assert that the Debtor did not provide adequate records, such as income statements or balance sheets for the business, and that the

4

Debtor should have utilized the capability of certain vending machines to calculate sales. These allegations form the basis of the Plaintiffs' objections to discharge.[3]

The Court notes that "[c]ompletely denying a debtor his discharge, as opposed to . . . declining to discharge an individual debt pursuant to §523, is an extreme step and should not be taken lightly." *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir. 1993). "Congress described §727's discharge provision as 'the heart of the fresh start provisions of the bankruptcy law.'" *Id*. (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977)). Therefore, when applying §727, the Court should construe the discharge provision liberally in favor of the debtor. *Rosen*, 996 F.2d at 1531. The creditor opposing discharge has the burden to establish the requisite elements by a preponderance of the evidence. *See Serio v. DiLoreto* (*In re DiLoreto*), 266 Fed. Appx. 140, 144-45 (3d Cir. 2008). With this guidance in mind, the Court analyzes the Plaintiffs' objections to discharge pursuant to §727(a)(3) and (5).

<u>11 U.S.C. §727(a)(3)</u>

Pursuant to §727(a)(3), a debtor is not entitled to a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the

---

[3] In their Objection to Discharge commencing this proceeding, the Plaintiffs also alleged that the Debtor transferred, removed, destroyed, mutilated or concealed property with the intent to hinder, delay or defraud. Although the Objection to Discharge does not cite to §727(a)(2), the language of the allegation is that of the statute. The Plaintiffs did not pursue this ground for objection to discharge at trial or in their post-trial brief. At the conclusion of trial, the Court directed Plaintiffs to identify in their post-trial brief their grounds for objection. As §727(a)(2) was not included, the Court views the allegations as having been abandoned and further holds that any objection on that basis was not preponderantly proven.

circumstances of the case[.]" In this case, the Plaintiffs allege failure to keep or preserve records, and there is no evidence of concealment, destruction, mutilation, or falsification of records.

A creditor objecting to discharge on this basis must prove by a preponderance of the evidence that (1) the debtor failed to maintain and preserve adequate records, and (2) such failure makes it impossible to determine the debtor's financial condition and material business transactions. *DiLoreto*, 266 Fed. Appx. at 145. "Proof of fraudulent intent on the debtor's part is not required." *K & K Co. v. Conde* (*In re Conde*), 386 B.R. 577, 583 (Bankr. W.D. Pa. 2008). Once the creditor satisfies his burden, the debtor must justify his failure to maintain and preserve adequate records. *DiLoreto*, 266 Fed. Appx. at 145.

Although it is the Debtor's discharge at issue, in this case the records sought are those of Debtor's business, a separate entity. Courts have held that, in certain circumstances, the disclosure required under §727(a)(3) may include disclosure of the books and records of an entity in which the debtor holds an interest. *See Gray v. Jackson* (*In re Jackson*), 453 B.R. 789, 797-98 (Bankr. E.D. Pa. 2011) (citing *Wachovia Bank, N.A. v. Spitko* (*In re Spitko*), 357 B.R. 272, 307 (Bankr. E.D. Pa. 2006)). When an individual debtor's income is derived almost entirely from an entity controlled by the debtor, the records of that entity can be critical in determining the financial condition of the individual debtor. *Jackson*, 453 B.R. at 800. In this case, as it is clear from the evidence that the Debtor owned and controlled Variety Vending, the Court finds that it is appropriate under the circumstances to evaluate the sufficiency of the books and records of the limited liability company in order to resolve the objection to the Debtor's discharge pursuant to §727(a)(3).

The analysis begins with whether the Plaintiffs met their burden to establish the inadequacy of Debtor's records such that it is impossible to determine the Debtor's financial

condition and material business transactions. In making this determination, it is important to note "[t]he purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992). The debtor is required to provide dependable information upon which his financial history can be traced as creditors are not required to risk that the debtor is concealing or withholding assets. *Id*. What is required under the statute varies depending upon what is reasonable under the particular circumstances of the case. *Id.* The law does not require a specific or impeccable form of bookkeeping or that a bank account be maintained at all. *Id.* "The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.'" *Id.* (quoting *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979)). In some cases, a business may be so small that very little or no records are required to be kept. *See Ivory v. Barbe* (*In re Barbe*), 466 B.R. 737, 745 (Bankr. W.D. Pa. 2012) (citing 6 Collier on Bankruptcy, ¶727.03[3][g] at 727–33). With these principles in mind, the Court examines the facts of this case.

The Debtor produced documents which revealed the financial condition of Variety Vending prior to the cessation of business. Using QuickBooks accounting software, the Debtor prepared three profit and loss statements which he provided to the Plaintiffs in the summer of 2010. Each of the three revealed a negative net profit. Barbara Haupt testified that Debtor's attempt at producing profit and loss statements was unsatisfactory and fell short of her expectation as someone who had been self-employed for over thirty years. Despite the Plaintiffs' assertion of inadequacy, for a small, unsophisticated business, the Court accepts the Debtor's statements as an honest and reasonable disclosure of the financial condition of the company at

the time the information was sought by Plaintiffs. Also, as further and more specific elaboration of the state of the business, the Debtor provided a packet of documents identifying, *inter alia*, existing accounts and their locations, equipment at particular locations, and average monthly revenue as to each business location. For some accounts, additional information was noted, such as discontinuation of the account. Taken together and considering Debtor's credible testimony, these documents provide an adequate description of Variety Vending's financial condition at the time the information was sought.

The Debtor acknowledged that his records were not elaborate. In addition to the documents already discussed, the Debtor provided the bank statements for Variety Vending's Northwest Savings Bank checking account from January through June 2010 along with copies of canceled checks throughout that time. As Variety Vending operated as a small cash business, the bank statements provide a helpful picture of its transactions. However, it is clear that the documents produced shed only a slight light on material business transactions.

Plaintiffs direct the Court's attention to the fact that the Debtor disposed of some equipment over the years yet did not retain records relating thereto. In addition, while some of the vending machines were capable of recording transactions, the Debtor apparently did not utilize this feature. Although the Debtor's record keeping was minimal and the records produced certainly do not reflect sophisticated bookkeeping, the Court must only address adequacy. The Plaintiffs failed to establish inadequacy of record keeping for this type of small, unsophisticated business for purposes of §727(a)(3).

Furthermore, even if the Plaintiffs were to have established inadequacy, this Court finds that the Debtor was justified in his record keeping under the facts of this case. Justification depends upon both objective and subjective factors, including "what a normal, reasonable person

8

would do under similar circumstances" and "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." *Meridian Bank*, 958 F.2d at 1231. Application of these considerations to the facts of this case establish justification.

The Debtor's business was by no means large, complex, or sophisticated. Although Variety Vending at one time offered its services to businesses in the Pittsburgh and Erie regions, it is clear that the business at that size was more than the Debtor could manage, and he sold the Erie division back to Jeff. In an attempt to save the business, the Debtor was forced to lay off his employees, operate the vending business on his own, and take on additional employment.[4] The Court does not doubt that his record keeping justifiably suffered as a result.

Although Plaintiffs assert that the Debtor is educated and has been in business for many years, there is no evidence of this assertion. Debtor purchased Variety Vending in 2006 and ceased operations in 2010. Furthermore, the Debtor began working at the vending company as a route worker, and apparently not in any sophisticated role. From the evidence, this Court concludes that the Debtor was an inexperienced businessman, who was struggling to manage the business as early as approximately one year into ownership of Variety Vending.

The lack of formal record keeping is also unsurprising given the informal relationship between the parties. Based upon the testimony, it is clear that the parties had a personal relationship long before the Debtor purchased the vending business. It is not unexpected that the

---

[4] In the process of attempting to save the business, the Debtor drained his mutual funds for business and personal expenses and even spent a night in jail for a check written with insufficient funds. Ultimately, the Debtor lost his home to foreclosure.

9

Debtor communicated rather informally with the Plaintiffs about his personal and business struggles and did not rely on producing formal statements to the Plaintiffs despite the substantial debt owed.

What is clear from the evidence and credible testimony of the Debtor is that his business, like many others, suffered from rising fuel costs, a slowing economy, and increased competition. The Debtor, despite his best efforts to solve the financial problems of the vending business, was unable to do so. Having considered what is reasonable under the circumstances of the case and, in particular, the experience and sophistication of this Debtor, the size and complexity of the Debtor's business, and the credit extended to the Debtor, and based on the evidence, the Court finds that the Plaintiffs have not met their burden. Simply put, the Plaintiffs made a risky decision to loan substantial funds to the Debtor while knowing that he could not obtain financing from any other source. Although the circumstances are unfortunate for all parties involved, the facts do not support denial of discharge. The Debtor's business records were not proven to be unjustifiably inadequate for purposes of §727(a)(3).

11 U.S.C. §727(a)(5)

Pursuant to §727(a)(5), a debtor's discharge will be denied if "the debtor has failed to explain satisfactorily, before determination of denial of discharge . . . , any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" In order to prevail, "[t]he objecting party must first make a showing that the debtor 'at one time owned substantial and identifiable assets that are no longer available to his creditors.'" *GMAC Inc. v. Coley* (*In re Coley*), 433 B.R. 476, 489 (Bankr. E.D. Pa. 2010) (quoting *In re Wasserman*, 332 B.R. 325, 333 (Bankr.N.D.Ill.2005)). Applying a burden shifting approach, the debtor then must provide a satisfactory explanation in

response. *Coley*, 433 B.R. at 489. For purposes of this provision, the propriety of the disposition of the assets is not the court's concern. *Id*. Rather, the court, in its discretion, must determine whether the explanation provided by the debtor is satisfactory. *Id*. An explanation is satisfactory if it (1) consists of more than a vague, uncorroborated statement, (2) is deemed worthy of belief by the court, and (3) leaves no question as to what happened to the unavailable assets. *Id.*

In this case, Plaintiffs allege that the disposition of assets of Variety Vending, as opposed to the disposition of assets of the *Debtor*, has not been satisfactorily explained by the Debtor. One court addressing similar facts held that, as opposed to the analysis under §727(a)(3) which may in some cases involve the evaluation of the records of distinct business entities, the analysis under "(a)(5) focus[es] only on property of the debtor or property which would have been property of the debtor's estate[.]" *First Nat'l Bank v. Orr* (*In re Orr*), Adv. No. 11-1502 ABC, 2011 Bankr. LEXIS 4618, at *12-13, 2011 WL 5854712, at *4-5 (Bankr. D. Colo. Nov. 22, 2011). Plaintiffs' allegations fail to identify any property previously owned by the Debtor which has been lost without satisfactory explanation.

Notwithstanding this concern, the Debtor has credibly testified, and this Court accepts, that some of Variety Vending's equipment was sold or scrapped over time due to the condition and/or cost of repairs. Although Barbara Haupt expected notification of the disposal of equipment, she acknowledged that, at some point, equipment may not be economical to repair. As to the disposition of proceeds received from the sale of the Erie division of Variety Vending to Jeff in 2008, the Debtor testified that, after the satisfaction of the three loans owed to the Plaintiffs, any proceeds received were deposited in the company's bank account and were used to pay suppliers and creditors. This Court credits the Debtor's testimony. The evidence establishes that the Debtor attempted to save the business even to his own personal financial

11

detriment, and the Court is satisfied with the Debtor's explanations under the circumstances. Therefore, denial of discharge is not appropriate pursuant to §727(a)(5).

**IV.    Conclusion**

For the foregoing reasons, this Court finds that the Plaintiffs failed to meet their burden of proof under §727(a)(3) and/or (5). Furthermore, even had the burden shifted to the Debtor, the evidence established that the Debtor was justified in keeping the types of records that he did, and he provided a satisfactory explanation for any alleged loss of Variety Vending's assets. Therefore, the relief sought in Plaintiffs' Objection to Discharge is denied, and the Debtor is entitled to a discharge. An appropriate order will be entered.

Date: September 7, 2012                              /s/ Carlota M. Böhm
                                                     Carlota M. Böhm
                                                     United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
   Office of the United States Trustee
   Jeffrey J. Sikirica, Esq., Chapter 7 Trustee
   John E. Gomolchak, Esq., Counsel to Plaintiffs
   Theodore and Barbara Haupt, Plaintiffs
   Michael S. Lazaroff, Esq., Counsel to Debtor/Defendant
   Brian C. Belonzi, Debtor/Defendant
   Danielle M. Belonzi, Debtor/Defendant